# UNITED STATES DISTCIT COURT

# MIDDLE DISTRICT OF LOUISIANA

JILLIAN BETHEL, PAUL BETHEL                                 CIVIL ACTION
AND RENEE BETHEL


VERSUS                                                      15-391-SDD-RLB


NATIONAL INDEMNITY
INSURANCE COMPANY,
J.D. & BILLY HINES TRUCKING, INC.,
ARNOLD E. BAYLOR AND
LIBERTY MUTUAL INSURANCE COMPANY


## <u>RULING</u>

This matter is before the Court on the *Motion for Partial Summary Judgment*[1] filed

by Plaintiffs, Jillian Bethel, Paul Bethel, and Renee Bethel ("Plaintiffs").   Defendants,

National Indemnity Insurance Company, J.D. & Billy Hines Trucking, Inc., and Arnold E.

Baylor ("Defendants") have filed an *Opposition*[2] to which Plaintiffs have filed a *Reply*.[3] For

the reasons outlined below, the *Motion* shall be granted.

## I.     FACTUAL BACKGROUND[4]

On May 5, 2014, at approximately 8:55 pm Plaintiff, Jillian Bethel ("Bethel"), and

Defendant, Baylor, were traveling east bound on Interstate 12 in Livingston Parish,

Louisiana.  Baylor, who was operating an 18-wheeler, changed from the left lane to the

center lane and struck Bethel's car, which was traveling in the center lane. As a result of

---

[1] Rec. Doc. 40.
[2] Rec. Doc. 45.
[3] Rec. Doc. 63.
[4] The Court bases the factual background on Rec. Docs. 40-1, 45.
36674

the collision, Bethel's vehicle spun several times, left the interstate, and collided with a tree.

Baylor maintains that he checked his mirrors and activated his right turn signal before moving into the center lane and, because Bethel's car was "beyond his sight", he did not see her car as he moved to the center lane.[5]  Defendants allege that Bethel also contributed to the alleged collision "by failing to appropriately react".[6]

As a result of this collision, Plaintiffs allege that Bethel "was thrust violently about her vehicle and sustained severe personal injuries"[7] resulting in fractures to her hand, thumb, and pelvis, and requiring multiple surgeries.  Bethel's injuries allegedly require continued medication and treatment and prevent her "from enjoying the life of a normal twenty year old".[8]

## II.    LAW AND ANALYSIS

### A.  Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[9]  "When assessing whether a dispute to any material fact exists, we consider all of the evidence in the record but refrain from making credibility determinations or weighing the evidence."[10]  A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's

---

[5] Rec. Doc. 45.
[6] *Id.*
[7] Rec. Doc. 40-1.
[8] *Id.*
[9] Fed. R. Civ. P. 56(a).
[10] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008).
36674

case."[11]  If the moving party satisfies its burden, "the non-moving party must show that summary judgment is inappropriate by setting 'forth specific facts showing the existence of a genuine issue concerning every essential component of its case.'"[12]  However, the non-moving party's burden "is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence".[13]

Notably, "[a] genuine issue of material fact exists, 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"[14]  All reasonable factual inferences are drawn in favor of the nonmoving party.[15]  However, "[t]he Court has no duty to search the record for material fact issues. Rather, the party opposing the summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports his claim."[16]  "Conclusory allegations unsupported by specific facts … will not prevent the award of summary judgment; 'the plaintiff [can]not rest on his allegations … to get to a jury without any "significant probative evidence tending to support the complaint."'"[17]

---

[11] *Guerin v. Pointe Coupee Parish Nursing Home*, 246 F.Supp.2d 488, 494 (M.D. La. 2003)(quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)(en banc)(quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25, 106 S.Ct. at 2552)).

[12] *Rivera v. Houston Independent School Dist.,* 349 F.3d 244, 247 (5th Cir. 2003)(quoting *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998)).

[13] *Willis v. Roche Biomedical Laboratories, Inc.,* 61 F.3d 313, 315 (5th Cir. 1995)(quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[14] *Pylant v. Hartford Life and Accident Insurance Company*, 497 F.3d 536, 538 (5th Cir. 2007)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

[15] *Galindo v. Precision American Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985).

[16] *RSR Corp. v. International Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010).

[17] *Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd. of San Antonio, Tex.*, 40 F.3d 698, 713 (5th Cir. 1994)(quoting *Anderson*, 477 U.S. at 249).

36674

As Defendants "do not oppose a finding that Baylor was acting in the course and scope of his employment with Hines Trucking,"[18] Plaintiffs' *Motion for Partial Summary Judgment*[19] on this issue is GRANTED.

### B. Liability for the Collision

Plaintiffs argue that the testimony of Baylor, an eye-witness, Officer Gerald Parker ("Officer Parker"), and the experts all support a finding of Baylor's liability.[20]  Plaintiffs also argue that Defendants fail to dispute or offer any alternative theory of liability for the collision.[21]  Defendants counter that "a determination of fault must be made by examining the conduct of both motorists under all the facts and circumstances,"[22] which would prevent the Court from granting Plaintiffs' motion.

Louisiana Revised Statute 32:79(1) states: "A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety."[23]  Louisiana law also states that a person may not "turn a vehicle from a direct course or move right or left upon a roadway unless and until such movement can be made with reasonable safety."[24]  In *Brewer v. J.B. Hunt Transport, Inc.*, the Louisiana Supreme Court articulated the standard of care owed by a motorist changing lanes on a highway:

> In summary, a motorist who attempts to change lanes on a multiple lane highway must ascertain before attempting the maneuver that it can be made safely without endangering oncoming traffic.  Under the jurisprudence, a greater burden of care is required for the motorist changing lanes that is

---

[18] Rec. Doc. 45.
[19] Rec. Doc. 40.
[20] Rec. Doc. 40-1.
[21] *Id.*
[22] Rec. Doc. 45.
[23] La. Rev. Stat. 32:79(1) (2016).
[24] *Id.* at 104(A).
36674

> demanded of a driver proceeding at a lawful rate on a straight
> line in a marked lane.[25]

Louisiana law requires that Baylor must have ascertained, before he moved from the left to center lane, that he could have done so safely without hitting Bethel's car; additionally, Baylor owes a greater duty of care as the motorist changing lanes than the duty owed by Bethel who was travelling straight in the center lane.

In his deposition, Baylor admitted he "entered the center lane, felt a bump, and then…snatched it [his 18-wheeler] to the left."[26]  Baylor also testified that he saw Bethel in the center lane several miles before the collision and overtook her in the left hand lane.[27]  Baylor claims he attempted to comply with his understanding of Louisiana law when he moved from the left hand lane into the center lane of I-12: "I looked in my mirror and I see (sic) a car just back past me.  I figured it was her [Bethel].  Turned my turn signal on, go to change lanes. We collided."[28]

According to Plaintiffs, in addition to Baylor's testimony, testimony from eye witnesses, law enforcement officials, and an expert witness all demonstrate that Baylor was the sole cause of the collision.[29]  Wayne Roberts ("Roberts"), a truck driver who witnessed the collision, testified that he observed Baylor's 18-wheeler travel to the center lane "striking" Bethel's car.[30]  Roberts then radioed Baylor, "Driver, you just hit that car."[31] Baylor responded over the radio, "Well, where did it come from?"[32]  Officer Parker testified

---

[25] 2009-1408, 2009-1428 (La. 3/16/10); 35 So.3d 230, 241.
[26] Rec. Doc. 40-7, p. 35.
[27] Rec. Doc. 40-7.
[28] *Id.* at p. 27.
[29] Rec. Doc. 40-1.
[30] Rec. Doc. 40-9, p. 10.
[31] *Id.* at p. 12.
[32] *Id.*
36674

that Baylor was "the reason she [Bethel] left the roadway."[33]  After analyzing both Baylor and Bethel's truck and automobile, respectively, Plaintiffs' expert Michael Gillen concluded that "Baylor's unsafe maneuver resulted in the impact with Bethel's Camry and its subsequent loss of control."[34]

Defendants argue that Bethel's testimony "indicates that Bethel understood the danger of being there [just in front of the tractor-truck] for an extended length of time."[35] According to Defendants, "despite recognizing the danger associated with traveling too close to an 18-wheeler, Bethel conceded she did not significantly increase her speed."[36] Defendants further argue that, "had Bethel not lingered in front of the tractor-truck and exercised reasonable care in accordance with safe driving practices to create separation between the tractor-truck and the Camry, the alleged collision clearly would not have occurred."[37]

Defendants posit that Bethel owed a duty under Louisiana Driver's Manual for Class D and E Drivers, as well as a general duty, to "take reasonable steps to avoid an accident if there is enough time to afford an opportunity to do so."[38]  Because the Court has previously stricken the Louisiana Driver's Manual for Class D and E Drivers from the record,[39] Defendants' only remaining evidence of a legal duty owed by Bethel is the duty to "take reasonable steps to avoid an accident if there is enough time to afford an opportunity to do so."[40]  Defendants offer Bethel's testimony that she tried to accelerate

---

[33] Rec. Doc. 40-10, p. 18.
[34] Rec. Doc. 40-8, p. 15.
[35] Rec. Doc. 45.
[36] *Id.*
[37] *Id.*
[38] Rec. Doc. 45 quoting *Fernandez v. General Motors Corp.*, 491 So.2d 633, 636-37 (La. 1986).
[39] *See* Rec. Doc. 73.
[40] *Fernandez v. General Motors Corp.*, 491 So.2d at 636-37.
36674

to avoid Baylor's 18-wheeler as evidence for their argument that Bethel breached her duty.[41]  Rather than supporting Defendants' claims, Bethel's testimony in fact shows that she acted in accordance with her legal duty in trying to avoid the collision – the Court declines to give merit to Defendants' argument based upon an erroneous reading of the jurisprudence that Bethel breached her duty because her actions did not result in an ultimate avoidance of the accident.

Because Defendants argue comparative fault as a defense, they must meet the standard for the comparative fault defense under Louisiana law.  In *Barnes v. Quinlan*, an Eastern District of Louisiana case in which the defendant also argued comparative fault, the court held, "under Louisiana law, the defendant bears the burden of proving contributory negligence/comparative fault by a preponderance of the evidence."[42]   In *Hano v. Louisiana Department of Transportation and Development,* the Louisiana First Circuit Court of Appeal stated that "a defendant who relies on contributory negligence as a defense bears the burden of proving plaintiff's negligence *and that such negligence was a contributory cause.*"[43]  Defendants in the present case have failed to provide summary judgment evidence that Bethel breached her duty, much less that she was the cause-in-fact of the accident based upon the preponderance of the evidence.

The Louisiana First Circuit Court of Appeal reviewed the granting of a summary judgment in *Thomas v. Hodges.*[44]   In affirming the district court's grant of summary judgment the Court of Appeal in *Thomas* stated, "when a motion for summary judgment

---

[41] Rec. Doc. 45.
[42] *Barnes v. Quinlan*, 01-3770, 2002 WL 31375606, (E.D. La. Oct. 22, 2002).
[43] 86-1435 (La. App. 1 Cir. 12/22/1987); 519 So.2d 796, 798. (emphasis original).
[44] 2010-0678, 2010-0679 (La. App. 1 Cir. 10/29/2010); 48 So.3d 1274.
36674

is made and supported…an adverse party may not rest on the mere allegations or denials, but must respond with affirmative evidence."[45]  Like the Defendants in the present case, the only defense alleged by the nonmovant in *Thomas* was comparative fault.[46]  Because the nonmovant provided no evidence of comparative fault, the *Thomas* court held that the nonmovant "failed to meet their burden to show any fault on the part [of the victim]"[47] and affirmed the granting of the summary judgment.   Like the nonmovant in *Thomas*, Defendants provided no evidence of fault on the part of Bethel and have, thus, failed to establish a genuine issue of material fact regarding whether Plaintiff breached a legal duty. Accordingly, Plaintiffs' *Motion for Summary Judgment* on the issue of liability for the collision is GRANTED.

## III.   CONCLUSION

For the reasons set forth above, Plaintiffs' *Motion for Partial Summary Judgment*[48] is GRANTED.

**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana on <u>January 12, 2017</u>.


_____
**JUDGE SHELLY D. DICK**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

---

[45] *Id.* at 1280.
[46] *Id.*
[47] *Id.*
[48] Rec. Doc. 40.
36674